FIRST NATIONAL BANK OF CARTHAGE v. MUTUAL BENEFIT LIFE INSURANCE COMPANY OF NEWARK, *Appellant.*

### Division One, June 22, 1898.

1. **Agent:** APPARENT AUTHORITY: CONVERSION.  Where an insurance company has held out a trust company to a borrower for five years as its agent to collect the accruing interest on a loan, and knowingly and without dissent permitted such trust company to collect the last installment of interest due, and where the evidence shows that this agency had been uniform in the management of five hundred other similar loans, and that the trust company had uniformly collected the principals thereof when they became due, and that the borrower in this case knew of such general agency, the authority of the trust company to act for the insurance company in receiving the principal of the particular loan when it becomes due, will be presumed.  And if the borrower sends the principal and the last installment of interest to the trust company, in the same draft, and the interest is transmitted to the insurance company, and the principal is converted to the use of the trust company and thereby lost, it will be held that the loss must be borne by the insurance company, and not by the borrower.

2. ———: ———: NOTICE OF AGENT'S AUTHORITY. And such will be the holding although, in reply to a letter from the borrower asking for a deed of release, the trust company stated: "The company holding the loan does not send papers and release out for collection, and the proper plan would be for you to send us check for the amount due, principal and interest;" it being held, under the circumstances of this case, that such letter was not sufficient to advise a reasonably prudent borrower that the trust company did not have authority to collect the loan.

*Appeal from Jasper Circuit Court.*—HON. W. M. ROBINSON, Judge.

AFFIRMED.

*E. T. & C. B. Allen* for appellant.

(1)  The effect of the correspondence transmitting the money is purely a question of law.  *Fruin v. Rail-*

road, 89 Mo. 397; *Milstead v. Mortgage Co.*, 49 Mo. App. 191; 1 Thomas on Trials, sec. 1370. (2) The meaning of the letters is not affected with any uncertainty, and there is no occasion to consider the surrounding circumstances. *Kimball v. Brauner*, 47 Mo. 399; *Fruin v. Railroad*, 80 Mo. 405; *Wolff v. Campbell*, 110 Mo. 119. (3) The letters on their face show that plaintiff transmitted the money to the trust company in its character of plaintiff's agent. *Milstead v. Mortgage Co.*, 49 Mo. App. 191; *Cumming v. Hurd*, 49 Mo. App. 139; *Adams v. Improvement Co.*, 44 N. J. L. 638; *Cheney v. Libbey*, 134 U. S. 68; *Security Co. v. Graybeal*, 52 N. W. Rep. 497; *Bank v. Burson*, 57 N. W. Rep. 705. (4) The letters on their face show that the trust company did not assume to accept payment of the note for the defendant, and the question of its authority to do so is immaterial. *Lane v. Duchac*, 73 Wis. 655; *Ross v. Trowbridge*, 63 N. W. Rep. 534; *Joy v. Vance*, 62 N. W. Rep. 140; *Cooley v. Williard*, 34 Ill. 73. (5) The trust company could not make this money, so received as plaintiff's agent, the money of the defendant so as to pay this note, except by sending it to the defendant. *Security Co. v. Graybeal*, 52 N. W. Rep. 497; *Bank v. Burson*, 57 N. W. Rep. 705; *Phillip v. Mayer*, 7 Cal. 83; *Bradford v. Arnold*, 33 Tex. 412. (6) It is a well settled rule that, if a debtor owing money on a written security pay to or settles with another as agent, it is his duty at his peril to see that the person so paid, or settled with, is in possession of the security. *Cumming v. Hurd*, 49 Mo. App. 139; *Tappan v. Morseman*, 18 Iowa, 499; *Austin v. Thorp*, 30 Iowa, 376; *Cooley v. Williard*, 34 Ill. 68; *Smith v. Kidd*, 68 N. Y. 136; *Crane v. Gruenewald*, 120 N. Y. 274; *Haines v. Pohlman*, 25 N. J. Eq. 179; Meachern on Agency, sec. 373; Jones on Mortgages, sec. 964. (7) The trust company had no authority to collect this note, and did not have the note, and no recovery

can be had except upon an estoppel, and no estoppel was pleaded, and none proved. *Alexander v. Rollins*, 84 Mo. 657; *Bank v. Doran*, 109 Mo. 40; *Ferneau v. Whitford*, 39 Mo. App. 317; *Cummings v. Hurd*, 49 Mo. App. 139. (8) The fact that interest coupons indorsed to it for collection were transmitted by defendant to the trust company, is not evidence that the trust company had authority to collect a principal note not in its possession. *Cummings v. Hurd*, 49 Mo. App. 146; *Austin v. Thorp*, 30 Iowa, 377; *Ross v. Trowbridge*, 63 N. W. Rep. 534; *Cox v. Cutter*, 28 N. J. Eq. 13; *Security Co. v. Graybeal*, 52 N. W. Rep. 497; *Smith v. Kidd*, 68 N. Y. 130; *Ilgenfritz v. Ins. Co.*, 81 Fed. Rep. 27; *Ins. Co. v. Mills*, 81 Fed. Rep. 32.

*E. O. Brown* for respondent.

(1) An agent who loans money and collects and remits interest to a non-resident holder of a note and mortgage, and is authorized to remit the principal and interest after the loan is due, is authorized to receive payment of the note and mortgage, although they are not at the time in his possession. *Shane v. Palmer*, 43 Kan. 481; *Manshardt v. Rott*, 59 Mo. App. 505; *Miller v. Wilson*, 126 Mo. 48; *Sharp v. Knox*, 48 Mo. App. 169. (2) The rule deducible from the authorities is that where as in this case, it appears the agent has repeatedly performed acts like the one in question, which the principal has ratified and adopted, his authority for the performance of the disputed act may be inferred. Mecham on Agency, sec. 86; *Edwards v. Thomas*, 66 Mo. 468; *Brooks v. Jamison*, 55 Mo. 505; *Gibson v. Zeibig*, 24 Mo. App. 65; *Greely-Burnham Groc. Co. v. Capen*, 23 Mo. App. 307; *Wheeler v. Metropolitan Co.*, 25 Mo. App. 190; *Railroad v. Simons*, 25 S. W. Rep

996; *S. W. Teleg. Co. v. Dale,* 39 C. L. J. 481; *Summerville v. Railroad,* 62 Mo. 391; *Emmerson v. Cogswell,* 16 Mo. 77; *Ferneau v. Whitford,* 39 Mo. App. 311.

BRACE, P. J.—On the fourth day of April, 1889, Isaac N. Hendricks, being the owner of the tract of land described in the petition in this cause, by his deed of trust of that date in which his wife joined, conveyed the same to one George W. Toms in trust to secure the payment to defendant, the said insurance company, of a certain promissory note for $2,000, due and payable on the first day of May, 1894, and five coupon interest notes thereto attached of the same date, each for the sum of $120, one payable on the first day of May of each successive year thereafter until the maturity of said principal note, all with interest at the rate of ten per cent per annum after maturity, and payable to the order of the defendant at its office in Newark, N. J.

Afterward on the eighteenth day of October, 1892, the said Hendricks by his warranty deed of that date in which his wife also joined, conveyed the premises to the plaintiff, who on the eleventh day of August, 1894, instituted this suit in the Jasper county circuit court, in which county the land is situate, alleging in its petition that all of the indebtedness evidenced by said promissory note and coupons and the interest thereon had been paid off and discharged according to their tenor and effect, and all the covenants of the deed of trust complied with and that thereupon the plaintiff had requested the defendant company to acknowledge satisfaction of said deed of trust, or to execute and deliver to plaintiff a sufficient deed of release thereof, the legal costs and charges for executing which had been paid to the defendant for that purpose, which, however, the defendant has refused to do. Wherefore plaintiff prays that the defendant be so required, and

that said deed of trust be adjudged satisfied, and for general relief.

The answer of the defendant after admitting the incorporation of the parties plaintiff and defendant and the execution of the notes aforesaid and the deed of trust, denied all the other allegations of the petition. On the hearing, the issues were found for the plaintiff and a decree entered that said deed of trust be canceled and for naught held and esteemed, and the cloud thereof upon plaintiff's title be removed, and that plaintiff recover of defendant its costs herein expended; from which decree and judgment, plaintiff appeals.

It appears from the evidence in the case, that in the year 1889 "The Wilson and Toms Investment Company" of the city of St. Louis, a corporation under the laws of the State of Missouri, was engaged in the business of "placing real estate loans on farm lands and placed a great many loans of that character for the Mutual Benefit Life Insurance Company" the defendant herein.

On the fifteenth of March, 1889, the said Hendricks made a written application to the said investment company, whereby he appointed said investment company his agent to procure a loan of $2,000 for the term of five years at six per cent per annum secured by trust deed on the premises in question. This application, with the recommendation of the investment company of the security offered, was submitted by said company to the insurance company on the twenty-ninth of March, 1889, and having been approved by the latter company, the promissory notes and deed of trust aforesaid were executed by the said Hendricks and wife, the deed of trust recorded, the notes and recorder's certificate delivered to the investment company and by it forwarded to the insurance company, the investment company drawing at the same time upon the insurance

company for the amount of the loan. The draft having been honored and the proceeds applied to the payment of a prior mortgage upon the premises, the deed of trust was then forwarded by the investment company to the insurance company. After the loan had been thus completed, the interest coupons, as they became due, were thereafter forwarded to and collected, first by the investment company and afterward by the Central Trust Company of St. Louis, which succeeded to the business of the investment company in May or June, 1891, and thereafter sustained the same relation to the parties as did the investment company before that date. The coupons were paid by Hendricks until his conveyance to the plaintiff bank, and afterward by the bank. This continued until the fifteenth of April, 1894, when the trust company, as had been the custom theretofore when coupons were about to fall due, mailed the following note, and blank for reply, to the plaintiff:

"CENTRAL TRUST COMPANY,
"Oriel Building, S. E. Cor. Sixth and Locust,
"St. Louis, Mo., April 15, 1894.
"*First National Bank, Carthage, Mo.*

"DEAR SIR:—Your next installment of interest, $160, will be due May 1, 1894, and to reach the mortgagee promptly your remittance should be in our hands at least five days before that time.

"Remittances may be made by New York or St. Louis draft, money order or currency by registered letter or express.

"Please return this notice with your remittance, and remit directly to us.

"Yours truly,
"CENTRAL TRUST COMPANY.
"I. N. HENDRICKS,"

"*Central Trust Co., St. Louis, Mo.*

"GENTLEMEN:—Inclosed please find——in payment of above amount, acknowledge receipt and send coupon to yours truly,    ——————.

"Principal also due."

In connection with this letter and blank, it may be well to note, that in negotiating this loan Hendricks in addition to the notes and deed of trust to the insurance company, also at the same time and as part of the same transaction executed and delivered to the investment company five other notes each for the sum of $40, falling due annually at the same time with the interest coupon notes aforesaid to the insurance company, secured by a second mortgage on the premises, by which arrangement, while the borrower paid eight per cent interest on his loan, the insurance company only received six per cent and the remaining two per cent went to the investment company as compensation for its services. As both notes fell due at the same time, both were included in the same notice, hence the notice of the installments of interest to fall due May 1, 1894, is stated to be $160—that amount being the aggregate of the last coupon interest note to the insurance company, and of the last commission note to the investment company. To this letter the plaintiff bank mailed the following answer:

"FIRST NATIONAL BANK,
"Carthage, Mo., April 17, 1894.

"*Central Trust Company, St. Louis,*

"GENTLEMEN:—Your notice of the maturity of I. N. Hendricks' $2,000 loan with $160 interest on s. w. qr. sec. 20, tp. 30, rge. 30, received, and will ask you to have the papers in your hands, with release, when due, as we desire to pay it off.

"Yours truly,
"WM. E. BRINKERHOFF,
"President."

To which answer the trust company replied as follows:

"St. Louis, April 18, 1894.

"*First National Bank,*

"Gentlemen:—Yours of 17th inst., rec'd, asking us to have papers in I. N. Hendricks' $2,000 loan here at maturity May 1, with release.

"The company holding the loan do not send papers and release out for collection, and the proper plan would be for you to send us check for the amount due $2,161, being principal $2,000, May interest $160, and $1 for release and securing papers. On receipt of same we will secure and forward you papers and release as promptly as possible.

"Yours truly,

"Central Trust Co., H. P. W."

Which reply was responded to by the bank as follows:

"First National Bank,

"Carthage, Mo., Apr. 30, 1894.

"*Central Trust Co., St. Louis,*

"Gentlemen:—We hand you herewith our No. b, 11226 on Contl. N. Bank, St. Louis, for $2,161 in payment of the I. N. Hendricks loan, due May 1, 1894—

"$2,000

"Int  .    .    .    .    .    .    .    160

"Release  .    .    .    .    .    .    1

$2,161

"Please acknowledge receipt, and forward papers to us at as early a date as possible.

"Yours &c.,

"E. B. Jacobs, Cashier."

The receipt of which letter and inclosure was acknowledged by postal card, addressed "First National Bank, Carthage, Mo.," as follows:

"CENTRAL TRUST COMPANY,

"Oriel Building, St. Louis, Mo.

"DEAR SIR:—Your favor for I. N. Hendricks' principal and interest is received with inclosures. Papers will be sent when received from the East."

The draft inclosed in the letter of April 30 was payable to the trust company and when received by the trust company was credited on its books, $2,000 to the principals collected on account of the insurance company, $120 to the interest collections account, and $41 to the credit of the trust company, and the draft deposited in bank to the credit of the general account of the trust company. The evidence tends to prove that the amount credited to the insurance company's interest account, $120, was remitted on the second of May, but it appears that the $2,000 principal went into the business of the trust company and was never remitted or accounted for to the insurance company by the trust company, which on or about the first of June, 1894, failed and made an assignment for the benefit of its creditors. Hence this suit to determine which of the parties ought to sustain the loss. The crucial question in the case being whether or not the trust company was the agent of the insurance company authorized to receive payment of the money in discharge of said principal note of $2,000.

I. Counsel for defendant contends, however, that the correspondence hereinbefore set out, contains all the evidence of the transaction claimed by plaintiff to have resulted in the payment of the note, and that it conclusively appears upon the face thereof that the money was transmitted to and received by the trust company as the agent of the plaintiff; hence the question whether or not the trust company was the agent of the defendant is immaterial. When the whole of this correspondence is read together in its proper

sequence as herein set out, in the light of the undisputed facts, we do not see how this inference can be fairly drawn therefrom. The plaintiff sustained the same relation to this indebtedness for which the Hendricks land was encumbered as Hendricks did, after the loan was consummated, and the trust company the same as did the investment company originally; therefore on the fifteenth of April, 1894, when the first letter was written by the trust company, the plaintiff, standing in the shoes of Hendricks, was indebted to the insurance company in the sum of $2,000 on the principal note, in the sum of $120 on the last coupon six per cent interest note, and in the sum of $40 to the trust company on the last two per cent interest or commission note, all treated in the correspondence under one head as the "I. N. Hendricks" loan. The connection of the two companies as creditors in that loan is not to be lost sight of, and reading the first letter of the trust company with these facts in view, it is evidently the letter of one holding himself out as representing all the creditors of the whole of such indebtedness and having authority to receive payment of the same, notifying the debtor that the indebtedness both principal and interest would be due on the first day of May, 1894, and requesting a timely remittance to the writer of the amount of the interest. The answer of the bank to this letter is a recognition of the character thus assumed by the trust company, and simply informs the trust company that the debtor is desirous of paying off the whole of the indebtedness at maturity, with a request that the trust company then have in its hands the necessary papers for the discharge thereof. It is just such a letter as, in the ordinary course of business, would be written by a debtor desirous of paying his debt and having his land released from the incumbrance thereon to his creditor, or to

his creditor's agent, authorized to receive such pay-
ment; and gives no color to the inference that the rela-
tion between the parties was otherwise, nor does the
reply of the trust company assume that any change in
the relation of the parties had taken place, but simply
informs the debtor in substance that according to the
mode of doing business between the creditors, the
insurance company and the trust company, the request
of the bank could not be complied with, but to remit
to the trust company the whole amount of the loan
and an additional dollar for release and securing
papers, and on receipt of same the papers and release
would be secured and forwarded to the bank as
promptly as possible.   While in this letter of the trust
company of April 18, the bank was informed the trust
company was not in the actual possession of the secu-
rities and could not be on the first of May, 1894, when
the loan matured, for the reasons therein stated, or of
an executed release discharging the incumbrance as
requested, there is nothing in the letter to indicate the
assumption of a different relationship to the indebted-
ness or to the parties creditor and debtor by the trust
company, than that assumed in its first letter.   This
letter also on its face is the letter of one assuming to
act for the creditor, directing the debtor how to pay
his debt with an assurance that upon payment thereof
to the writer, in that manner, he should receive his
securities therefor.   And in pursuance of the direc-
tions therein contained, the bank on the thirtieth of
April made its remittance in its letter of that date ''in
payment of the I. N. Hendricks loan due May 1, 1894''
and so we find, that in all this correspondence the trust
company appears in the character of agent of the insur-
ance company, assuming authority as such, to receive
payment of the debt, and being so treated by the plain-
tiff bank, and nothing appears to support the conten-

tion that the trust company appears therein as the agent of the bank to forward the money to the insurance company. That the defendant bank paid the money in good faith to the trust company, believing that said company was the agent of the insurance company, duly authorized to receive such payment, and that the trust company held itself out to the bank as such agent, and received the money in that capacity, we think is clearly shown by the correspondence, and the real question in the case, is as first stated, whether the trust company was in fact the agent of the insurance company authorized to receive the payment made in discharge of the principal note of $2,000 as contended for by plaintiffs.

II. It must be conceded that express authority from the insurance company to the trust company to collect this principal note was not shown by the evidence. But this was not necessary under the well settled rule that, "Whenever a person has held out another as his agent, authorized to act for him in a given capacity, or has knowingly and without dissent permitted such other to act as his agent in such capacity, or where his habits and course of dealing have been such as to reasonably warrant the presumption that such other was his agent authorized to act in that capacity, whether in a single transaction, or in a series of transactions, his authority to such other person to act for him in that capacity will be conclusively presumed, so far as may be necessary to protect the rights of third persons who have relied thereon in good faith, and in the exercise of reasonable prudence, and he will not be permitted to deny that such other was his agent, authorized to do the act he assumed to do, provided that such act is within the real or apparent scope of the presumed authority." Mechem on Agency, sec. 84 and cases cited; *Johnson v. Hurley*, 115 Mo. 513; and cases cited.

To determine whether the plaintiff's contention can be maintained under this rule, it will be necessary to look somewhat further into the facts and circumstances disclosed by the evidence. The evidence tends to prove that the relation that existed between the insurance company and the trust company, in respect to this loan after it was consummated, was the same as existed between them as to all other loans placed in like manner by the trust company or its predecessor, the investment company, for the insurance company; that during the continuance of these relations loans of this character to the amount of about $2,350,000 were placed; that in making the loans an officer of the trust company was made trustee, and "after the loans were made, the investment company and its successor, the trust company, had charge of the collection of the interest and principals as they matured on all such loans;" that the principals thus collected amounting to about $700,000 on about five hundred different loans, and the interest to about $500,000; that loans of this character were placed in about thirty-five counties in the State of Missouri, several in Jasper county, but how many or in what amount in that county besides the one in question, does not appear. The trust company kept a record of all the loans, a separate ledger account for all principals collected, but the interest was carried through the general interest collection account. As a rule all correspondence in regard to the loans was conducted through the trust company, and when occasionally a borrower would write to the insurance company about a loan, as a rule his letter was referred to the trust company for action thereon. The trust company attended to seeing that the taxes were paid on the property in accordance with the contract, and when a loss on the mortgaged premises occurred by fire, attended to the adjustment and collection of the policy therefor for the insurance com-

pany. About the middle of each month the insurance company would send to the trust company all its coupon interest notes maturing the next month, indorsed to the order of the trust company for collection. About the same time in each month the trust company, regardless of whether the coupons had reached them at that time or not, sent to each of the borrowers a letter similar to that of the fifteenth of April in this instance, notifying him when the interest on his loan would become due, including in the amount its own commission note, and the insurance company's coupon note. As payments were made to the investment company or the trust company, "these companies canceled the interest notes and returned them to the party who made the payments and forwarded the proceeds to the insurance company. When the principal matured they also notified the borrower of that fact, offering to secure a renewal for another term of years, if desired, and requesting the borrower, if he did not wish to renew, to remit the principal to it. The principals as collected were always forwarded to the insurance company, which then returned the papers with a proper release of the deed of trust, which was in turn returned to the borrower." In this manner these loans, principal and interest, to the large amount and number hereinbefore stated, were collected by the trust company and its predecessor for the insurance company, except in those cases where the borrower was unable to pay at maturity, when the securities were forwarded to the trust company for foreclosure, who then instituted such proceeding, and thereby made the collection for the insurance company and remitted the proceeds. Thus it appears that it was the business of the trust company (to facilitate which, one of its officers had been made the trustee in the deed of trust), to attend to the collection of all the loans, principal and interest, placed

by the trust company or its predecessor for the insurance company.   In the language of one of the witnesses, secretary of the trust company and of its predecessor, from the beginning "they had entire charge of the collection of the loans, interest and principal, and it was part of the business."   The evidence further tends to show that the officers of the plaintiff bank in addition to having paid the previous interest notes falling due after its purchase of the land, had cognizance of other payments made by other parties on similar loans, and of the mode in which the business was conducted for several years both before and after the purchase, and that their understanding was "that all of the business of the insurance company touching loans was transacted through the trust company."

The insurance company having thus for years, by its habits and course of dealing, held the trust company out to all persons connected with these loans as its agent, authorized it to receive payment of the same, both principal and interest, at maturity.   The plaintiff bank when it received notice from the trust company that the principal and interest of "the Hendricks loan" was due, with directions to remit the full amount of both to the trust company, having knowledge of the insurance company's habits and course of dealing with these loans, had therefrom in connection with its course of dealing theretofore with this particular loan, the right to presume that the trust .company had authority from the insurance company to receive the remittance thus directed to be made in full payment of the principal of the loan, and the interest thereon, and having in good faith made the remittance in payment thereof, relying upon such apparent authority of the trust company, such presumption in this action ought to be held conclusive of such authority against the insurance company, unless something is to be found in

the correspondence that would advise a reasonably prudent man that the trust company really had no such authority.    Defendant contends that there was such a monition, as to the principal of the loan, in the trust company's letter of the eighteenth of April, in which the bank was advised in substance that the agent was not in possession of the security and according to their course of business could not get them from its principal for the purpose of delivery and return until payment to the agent was made.    We do not think in the circumstances of this case, a reasonably prudent debtor would find in that advice a suggestion of any want of authority upon the part of the agent to receive payment of the money.    He would doubtless infer therefrom that he was dealing with a reasonably prudent creditor, who had adopted a mode of doing business which required that the money of his debtor who was desirous of paying off his debt should in fact be first paid before the securities therefor would be surrendered or released, but no suggestion that payment was not in this instance to be made to the agent as always theretofore they had been made in like cases under like circumstances. We are of the opinion that the conclusion reached by the chancellor is correct, and that the decree and judgment of the circuit court ought to be affirmed.    It is accordingly so ordered.    All concur except ROBINSON, J., not sitting.